# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOANNE C. KLOSIEWICZ,               )
Individually and as Personal        )
Representative of THE ESTATE OF      )
THOMAS J. KLOSIEWICZ, SR.,          )
THOMAS J. KLOSIEWICZ, JR.,          )
AMY WHARRY, and DENISE FAY,         )
            Plaintiffs,          )    C.A. No.  N17C-02-191 VLM
                          )
      v.                   )
                          )
ROGER C. STEVENSON, M.D., and       )
LIMESTONE MEDICAL AID UNIT          )
LLC,                                )
            Defendants.          )

## <u>ORDER</u>

Submitted: January 14, 2020
Decided: February 12, 2020

*Upon Consideration of Plaintiffs' Motion for New Trial,*
**GRANTED.**

Randall E. Robbins, Esquire and Randall J. Teti, Esquire of Ashby & Geddes, Wilmington, Delaware. *Attorneys for Plaintiff.*

Stephen J. Milewski, Esquire of White and Williams LLP, Wilmington, Delaware. *Attorney for the Defendant.*

**MEDINILLA, J.**

1

**AND NOW TO WIT,** this 12th day of February, 2020, upon consideration of the Plaintiffs'[1] Motion for New Trial, Defendants Roger Stevenson, M.D., and Limestone Medical Aid Unit LLCs' ("Defendants") Response in Opposition, Plaintiffs' Reply, oral arguments heard January 14, 2020, and the record in this case, **IT IS HEREBY ORDERED** that Plaintiffs' Motion is **GRANTED** for the following reasons:

1. On July 19, 2019, after a five-day trial in this medical negligence case, a jury returned a verdict in favor of Defendants. In so doing, it found that Dr. Stevenson met the standard of care in treating Plaintiff Tom Klosiewicz ("Plaintiff" or "Mr. Klosiewicz"), who died of sepsis one day after he presented to the Limestone Medical Aid Unit ("Limestone") with an acute onset of symptoms that were misdiagnosed as flu.

2. On August 2, 2019, Plaintiffs filed a timely Motion for New Trial, arguing that Defendant elicited undisclosed inadmissible expert testimony and that the verdict was manifestly against the evidence.[2] On August 16, 2019, Defendants filed their Response in Opposition.[3] On August 23, 2019, Plaintiffs filed their Reply. On September 17, 2019, Defendants supplemented their Response. On December

---

[1] Plaintiffs are Joanne C. Klosiewicz, Individually and as Personal Representative of the Estate of Thomas J. Klosiewicz, St., Thomas J. Klosiewicz, Jr., Amy Wharry, and Denise Fay.

[2] Plaintiffs' Motion for New Trial at ¶ 2 [hereinafter "Pl.s' Mot."].

[3] Defendant's Answer to Plaintiffs' Motion for New Trial at page 7 [hereinafter "Def. s' Resp."].

31, 2019, the Court sought clarification and heard oral arguments on January 14, 2020.

3. The bases for a new trial relate primarily to the testimony offered by both Defendant Dr. Stevenson and the Defendant's standard of care expert, Dr. Coletti. The first claim is that Dr. Stevenson provided inadmissible expert opinion on the issues of standard of care and causation. The second claim is that Dr. Coletti exceeded the scope of the relevant timeframe for his expert opinion on the issue of standard of care. Since the jury never reached the issue of causation, the Court focuses on the testimony of Dr. Stevenson on standard of care and his role as either a fact or expert witness.[4] His role has remained unclear throughout this case and even through oral arguments.

4. Defendants named Dr. Stevenson in their expert disclosure under Rule 26, indicating that he would testify on behalf of Defendants on standard of care, and limit the testimony to what he provided at deposition. Defendants subsequently changed their minds and designated him a fact witness in their Motion *in Limine* to limit Plaintiffs' ability to challenge Dr. Stevenson's credentials as an expert after Plaintiffs learned of his failed board exams and his admission at deposition that he was reluctant to take the exams because he did not believe he could pass them.

---

[4] Because the Court finds in favor of Plaintiffs on the first claim, it does not need to reach a decision with respect to the claims related to Dr. Coletti.

3

Plaintiffs then not only reserved the right to call him as an expert, they named him in the Pre-trial Stipulation as a fact/expert witness, and reiterated their intent to call him as a standard of care expert.[5]

5.   At trial, the parties also stipulated that the Plaintiff did not have a spleen.[6] The Stipulation was introduced to ensure no liability would attach against the doctor for not knowing that the patient did not have a spleen, and to help the jury consider this fact on the issue of causation.  This was consistent with Defendants' theory in the Pre-trial Stipulation that "the reason for the outcome in this case was because [Mr. Klosewicz] did not have a spleen."[7] Indeed, during opening statements, Defense counsel argued that the doctor should not found liable where the absence of the spleen caused Plaintiff's death.

6.   Each side called their expert witnesses for both standard of care and causation.  Plaintiffs also called Dr. Stevenson in their case-in-chief.  On cross-examination, Defense counsel posed the following hypothetical question to his client: "If you had known Doctor, that Mr. Klosiewicz didn't have a spleen, would you have done anything differently that day?"  Without objection, Dr. Stevenson's

---

[5] See Plaintiffs' Response to Motion in Limine to Preclude Dr. Stevenson's Failed Board-Certification Attempts at ¶ 10.
[6] The Stipulation read as follows 1. Nobody, including [Plaintiff] and [sic] his physicians, knew that he did not have a spleen; 2.  It was first discovered that [Plaintiff] did not have a spleen at the time of his autopsy; 3.  Although [Plaintiff's] autopsy states that his spleen appeared to have been surgically removed, there is no evidence that this ever happened; 4.  There is no claim that Dr. Stevenson should have known that [Plaintiff] did not have a spleen. See Pl.s' Mot., Exhibit C.
[7] Def.s' Resp., Exhibit D at page 4.

4

response was that he "would have sent him to the emergency room, knowing that the spleen is a significant organ in the acute onset of illness."[8]

7. On re-direct, Plaintiffs' counsel asked a series of follow-up questions regarding what the doctor would have done if he had known about the spleen. The doctor reiterated that he would have sent the patient to the emergency room, and when asked why, he added, "Because no spleen increases the dynamic of what's going on . . . you don't have the benefit of the splenic response to infection . . . . If I knew he didn't have a spleen, I would have probably signed him out with a fever…with rule out sepsis and sent him to the hospital."[9]

8. After Dr. Stevenson testified, outside the presence of the jury, Plaintiffs' counsel moved to strike the doctor's responses as speculative and not relevant. Counsel asked for a curative instruction, arguing that the hypothetical question regarding the spleen was not germane to the issue before the jury because the parties agreed that Dr. Stevenson did not know at the time when he treated his patient that the Plaintiff did not have a spleen. Plaintiffs' counsel conceded that the absence of the spleen was germane to the issue of causation, but challenged the line of questioning that allowed this witness to use the Stipulation to speculate and testify as to what he would have done differently.

---

[8] Def.s' Resp. at page 1.
[9] Trial Transcript – Partial Testimony of Dr. Roger Stevenson (July 16, 2019) at 70:1-8. [hereinafter "Trial Tr. II"].

5

9. Defense counsel opposed the request for a curative and argued that the doctor's opinion was not only relevant but that it went to the very core of the dispute between the parties. And that "*these are all expert opinions* that have been disclosed, [and] talked about in deposition," and as a result are "germane to the lawsuit and relevant . . . ."[10] The Court accepted Defendants' representations and overruled the motion to strike and did not give a curative instruction. The jury returned a verdict in favor of Defendants on the issue of standard of care.

**Contention of Parties**

10. Plaintiffs argue Defendants' failure to disclose Dr. Stevenson's new standard of care opinion warrants a new trial.[11] They argue the failure to know that the Defendant doctor would opine regarding the significance of the spleen prevented Plaintiffs from taking appropriate discovery, and prepare for the issues at trial in violation of both Civil Rules 16 on timely disclosure of opinions, and 26(e) related to supplemental discovery.

11. Defendants' argument is two-fold: first, that disclosure was not necessary because Dr. Stevenson did not testify as an expert, clarifying at oral argument that when they represented "these are all expert opinions," they did not mean to include Dr. Stevenson. Alternatively, Defendants argue that even if he was

---

[10] Trial Excerpt (July 16, 2019) at 5:6-14 [hereinafter "Trial Tr. III"].
[11] Pl.s' Mot. at ¶ 3.

6

an expert, Plaintiffs called him as their expert witness, and the line of questioning was proper on cross-examination. In addition, Defendants argue that the motion to strike, made only after the Plaintiffs failed to elicit a more favorable response from the Defendant doctor, was untimely and therefore, waived.

## Standard of Review

12. Under Superior Court Civil Rule 59(a), a new trial may be granted as to all or part of the issues in an action.[12] The Court has broad discretion in considering a motion for new trial. However, such discretion "'should be exercised sparingly and cautiously,' and . . . 'should be invoked only in cases in which the evidence preponderates heavily against the verdict.'"[13] For this reason, the Court will not upset a jury verdict unless it finds that: "'a reasonable juror could not have reached the result[;]'" "the jury disregarded applicable rules of law[;]" or "the jury's verdict is tainted by legal error committed by the Court during the trial."[14]

## Discussion

13. Under Superior Court Civil Rule 26, a party may require an opposing party to identify any and all experts expected to testify at trial, "to state the substance of the facts and opinions" to which the party expects the experts to testify, and to

---

[12] *See* DEL. SUPER. CT. CIV. R. 59.
[13] *Storey v. Camper*, 401 A.2d 458, 460 (Del. 1979) (quoting *Miller v. Pennsylvania R. Co.*, 161 F. Supp. 633, 640 (D.D.C 1958)).
[14] *Mitchell v. Haldar*, 2004 WL 1790121, at *3 (Del. Super. Ct. Mar. 20, 2008) (quoting *Storey*, 401 A.2d at 465)).

7

provide "a summary of the grounds" for each expected opinion.[15] It is not uncommon for a plaintiff in a medical negligence action to call the defendant doctor as a witness and question him as a fact or expert witness. Here, both sides dispute whether Dr. Stevenson's testimony implicates Rule 26.

14.    Defendants argue today that Dr. Stevenson's opinion was not expert opinion. They argue that asking him what he would have done had he known his patient did not have a spleen was simply "teeing up the causation" opinion that would later be offered by their causation expert, and that doctor did not testify that the lack of spleen caused the patient's death. While this may be true, it is important first to determine whether Dr. Stevenson was testifying as an expert or a fact witness.

15.    Because it is undisputed that Dr. Stevenson did not properly diagnose his patient when he decided to send Plaintiff home with a prescription for flu medicine, Dr. Stevenson's testimony included details about the examination he performed for the purpose of identifying and diagnosing the illness from which his patient suffered.[16] "While an expert witness assists the jury to understand the facts, a treating physician testifies as a fact witness 'concerning his or her own medical performance on a particular occasion and is not opining about the medical

---

[15] DEL. SUPER. CT. CIV. R. 26(b)(4)(i).
[16] The Court's recitation of the testimony of Dr. Stevenson is specifically only from his trial testimony. *See generally* Trial Transcript – Partial Testimony of Dr. Roger Stevenson (July 15, 2019) [hereinafter "Trial Tr. I"].

8

performance of another.'"[17] "This necessarily involves testifying with regard to the exercise of the treating physician's specialized medical knowledge as applied to other facts of the case, namely the plaintiff's symptoms."[18] "A treating physician is a fact witness, and testifies to past facts based on personal knowledge."[19]

16. During Plaintiffs' case-in-chief, Plaintiffs' counsel elicited these facts to demonstrate that the physician's medical knowledge was lacking, and to prove that Dr. Stevenson's conduct did not meet the standard of care. Dr. Stevenson testified about his experience in the medical field from 1990 until the summer of 2016 when employed full-time at the Limestone Medical Aid Unit. He testified that from 1974 until 1980 he worked at an emergency practice and applied the same standard of care at the emergency department as he did at Limestone.[20] He testified that he never taught in any medical school, had never lectured at any medical conferences and had not been published in any medical journals.[21] When asked if he subscribed to any medical journals, he testified that he "had the New England Journal of Medicine for a few years, but other than that, [he] just reviewed free

---

[17] *Gutierrez v. Vargas*, 239 So. 3d 615, 622 (Fla. 2018) (quoting *Fittipaldi USA, Inc. v. Castroneves*, 905 So.2d 182, 186 (Fla. Dist. Ct. App. 2005)).
[18] *Id.*
[19] *Id.*
[20] Trial Tr. I at 15:4-14.
[21] *Id.* at 16:14-22.

magazines . . . ."[22] When asked if he had reviewed literature concerning the issues in the case, he stated he had not.[23]

17.    Dr. Stevenson testified about the signs and symptoms of bacteremia and sepsis.   He explained his understanding of the definition of bacteremia, and discussed the signs and symptoms associated with this infection.  When asked what would be done when someone presented with signs and symptoms suspicious of sepsis, Dr. Stevenson testified, "they would go to the emergency room" as the standard of care.[24]   He further testified that, if untreated, sepsis could progress rapidly and cause death.

18.    Directed to his own deposition regarding the definition of tachycardia, it was highlighted for the jury that he had misstated his understanding of tachycardia; a rapid heart rate or pulse as one factor to consider as a sign of sepsis.[25]  When asked if he went back to look at what the Plaintiff's heart rate was when he did not have an elevated heart rate, the Defendant doctor testified that he did not "remember looking into that specifically."[26]

---

[22] Trial Tr. I at 16:23-17:6.
[23] *Id.* at 18:5-16.
[24] *Id.* at 21:11-22.
[25] At his deposition, the doctor testified that a heart rate of under 110 beats per minute was normal, while tachycardia is defined as a heart rate over 100. *See id.* at 25:2-12. For Mr. Klosiewicz's age and health, the Defendant doctor testified that a normal rate was 70 to 90 beats per minute. *See id.* at 25:15-18. Mr. Klosiewicz presented with a heartrate of 109.
[26] *Id.* at 25:19-22.

10

19.    The Defendant doctor was questioned about his familiarity with the screening tool known as SIRS, and the four criteria used in that tool to identify patients at risk of sepsis.[27] He testified he did not know there were any screening tools when he was practicing.[28] When asked if he considered these factors in evaluating whether Mr. Klosiewicz was at risk for sepsis, Dr. Stevenson testified that he "used them as a measure of the illness but not specifically for sepsis,"[29] and that he instead used his "clinical impression" to determine if a patient was at risk of sepsis.[30]

20.    He explained further that flu and sepsis often present with similar or overlapping symptoms. He was asked, "when a patient presents with the same . . . signs and symptoms that could be the flu or could be sepsis . . . wasn't it the standard of care to rule out sepsis because if you are wrong, the patient will likely die?"[31] Dr. Stevenson responded that his evaluation was more "flu oriented because of the patient's history."[32] Asked if Mr. Klosiewicz's history upon arrival at Limestone

---

[27] Trial Tr. I at 31:15-23. The SIRS criteria were identified as: (1) whether patient had a fever of over 100.4 or less than 96.8; (2) whether patient had a heart rate greater than 90 beats per minute; (3) whether the patient had a respiratory rate of greater than 20 breaths per minute; and (4) whether patient had an abnormally high or low white blood cell count.

[28] *Id.* at 31:4-6.

[29] *Id.* at 32:1-13.

[30] *Id.* at 32:14-18.

[31] *Id.* at 33:16-22.

[32] *Id.* at 33:23-34:1.

was consistent with sepsis, the doctor testified that sepsis *was included* in his "differential" diagnosis.[33]

21.    Presented with this differential diagnosis (sepsis) that the patient has signs and symptoms consistent with a "life-threatening" condition, the doctor was asked if standard of care required him to rule out the life-threatening condition.[34] Dr. Stevenson maintained that it was the end of flu season "so the potential for flu was still there."[35] Plaintiffs' counsel continued:

Q:    "Sure the potential for flu was still there but wasn't the potential for sepsis there because his history was also consistent with sepsis, you've testified to that correct?"[36]

A:    "Yes."[37]

Q:    "And isn't the standard of care . . . that if on your differential diagnosis, a life threatening illness is on that list, you've got to rule that out?"[38]

A:    "Yes."[39]

Q:    "You did not rule out that Mr. Klosiewicz had potential for sepsis, correct?"

A:    "[S]epsis was not high on my list at that particular time. It was in my differential, but I didn't consider the situation to be that dire . . . ."

---

[33] Trial Tr. I at 34:9-35:4.
[34] *Id.* at. 35:6-14.
[35] *Id.* at 35:15-36:3.
[36] *Id.* at 36:4-7.
[37] *Id.* at 36:8.
[38] *Id.* at 36:12-15.
[39] *Id.* at 36:17.

12

Dr. Stevenson conceded that he should have considered the situation to be that serious "in retrospect."[40] He later testified he believed he met the standard of care.[41]

22.     On cross-examination, the doctor was asked for the first time about the Stipulation read to the jury, and the significance of the spleen. In considering whether the testimony was expert, "the determination turns on the role played by the witness: if the treating physician gives a medical opinion formed during the course and scope of treatment in fulfillment of their obligation as a physician, then the physician is a fact witness, albeit a highly qualified one."[42] Dr. Stevenson did so on direct-examination.

23.     "If, however, the treating physician gives an opinion formed based on later review of medical records for the purpose of assisting a jury to evaluate the facts in controversy, the physician acts as an expert witness, and should be considered as such."[43] Dr. Stevenson did so on cross-examination.

24.     Here, Plaintiffs' entire case against the physician was that the Plaintiff should have been sent to the emergency room because the onset of symptoms met the criteria for sepsis. It is undisputed that the doctor failed to diagnose sepsis. It is

---

[40] Trial Tr. I at 36:20-37:3.
[41] Trial Tr. II at 18:4-8.
[42] *Gutierrez v. Vargas*, 239 So. 3d 615, 624 (Fla. 2018).
[43] *Id.* (citing *Lion Plumbing Supply, Inc. v. Suarez*, 844 So. 2d 768, 771 (Fla. Dist. Ct. App. 2003) (holding it is improper for a treating physician to "serve[ ] as a conduit to place specialist testimony before the jury, or offer[ ] medical opinions based on specialist reports" when testifying as a lay witness rather than an expert)).

also undisputed that he incorrectly diagnosed the flu. He testified that "in retrospect" he should have assessed the situation as "more dire."[44] It is also undisputed that his diagnosis delayed the emergency care that Mr. Klosiewicz untimely received the next day.

25. The Defendants' theory focused on causation and that the doctor's decision, even if he breached the standard of care, did not cause Plaintiff's death. Defendants maintained, "the reason that Mr. Klosiewicz sustained injuries and died was because he did not have a spleen . . . ."[45] They presented expert testimony that the lack of a spleen caused his death and that sending him to the emergency room would not have made a difference. Yet, the jury never reached the issue of causation. Instead, they returned a verdict that the doctor did not breach the standard of care despite his testimony that the diagnosis of sepsis was "in his differential," and he failed to rule it out, instead sending the patient home. Thus, the expert opinion on standard of care was critical.

26. Here, Defendants stated in their Rule 26 disclosures that Dr. Stevenson's testimony would be limited to the testimony offered at deposition. Although it was represented that all opinions had been disclosed, there was no mention of the significance of the spleen by Dr. Stevenson. Defendants concede that

---

[44] Trial Tr. I at 36:20-37:3.
[45] Def.s' Resp., Exhibit D at page 14 at ¶ 8.

14

they changed Dr. Stevenson's designation as expert when it became strategically beneficial to designate him a fact witness in an attempt to reduce the impeachment evidence expected from Plaintiffs. That Plaintiffs decided to call him instead does not change the requirement under Rule 26 that his testimony should have been limited as disclosed. Regardless of which party called him, he gave an undisclosed and inadmissible opinion that violated Rule 26.

27. As for the timeliness of the motion to strike, upon further review of Plaintiffs' motion to strike, it is noted that the request was made immediately after Dr. Stevenson testified, outside the presence of the jury. "This Court has consistently required that any objections be made contemporaneously. Failure to do so waives any claim of error. The reasoning is simple: 'A party must timely object to improper statements made during closing argument in order to give the trial court the opportunity to correct any error.'"[46]

28. Here, the Court finds that it was a timely motion to the extent that the Court had the opportunity to give a curative instruction. Even if Plaintiffs' counsel had made his objection immediately after the question was asked, the Court would have ruled against them for the same reasons made after Dr. Stevenson testified fully.

---

[46] *Gen. Motors Corp. v. Grenier*, 981 A.2d 531, 541 n. 27 (Del. 2009) (quoting *Medical Center of Delaware, Inc. v. Lougheed*, 661 A.2d 1055,1060 (Del. 1995); citing *Koutoufaris v. Dick*, 604 A.2d 390, 400 (Del. 1992) ("[T]he failure of opposing counsel to make a contemporaneous objection deprived the trial judge of the opportunity to deal with the problem when it arose. Such inaction is deemed a waiver of any resulting error for appellate purposes."); *Delaware Electric Coop., Inc. v. Duphily*, 703 A.2d 1202, 1210 (Del. 1997)).

Rejecting the need to provide a curative instruction, it did so because it believed that the expert's opinion had been disclosed. It had not. The error was not harmless.

29. The Court disagrees that this was simply a hypothetical question asked of an expert witness. As stated, the Stipulation was introduced to assist the jury to make sure no liability was inferred against the doctor for not knowing that the patient did not have a spleen, and allow them to consider this fact on the issue of causation. A review of the record does not support Defendants' argument that this hypothetical questioning was appropriate to "tee up" this issue of causation where the questioning did more.

30. When asked on cross-examination about *his treatment* of the patient, Dr. Stevenson was able to use this fact—that the jury was specifically told he did not know at the time of treatment—to reassess his expert opinion on standard of care. "An expert witness testifies with the benefit of hindsight, whereas a treating physician does not."[47] With the benefit of the findings in the autopsy report, the doctor offered *new* expert opinion that the spleen was "a significant organ in the acute onset illness."[48] And then explained to the jury why this finding was important to the determination that he *would* have met the standard of care and sent the patient

---

[47] *Gutierrez v. Vargas*, 239 So. 3d 615, 622 (Fla. 2018) (citing *Ryder Truck Rental, Inc. v. Perez*, 715 So.2d 289, 290–91 (Fla. Dist. Ct. App. 1998) ("Treating physicians do not acquire their 'expert knowledge for the purpose of litigation but rather simply in the course of attempting to make [their] patient well.'") (alteration in original) (quoting *Frantz v. Golebiewski*, 407 So.2d 283, 285 (Fla. Dist. Ct. App. 1981))).
[48] Trial Tr. II at 62:19-63:1.

to the emergency room. To ask him the hypothetical question "what would you have done had you known" was contrary to the circumstances of the case, and allowed the Defendant doctor to use the stipulated fact on the issue of causation and convert it to a *new* and undisclosed opinion on standard of care.

31. Even accepting Defendants' argument *today* that Dr. Stevenson did not give expert testimony, at best, this line of questioning called for speculation of a fact witness regarding the treatment of his patient. Plaintiffs' counsel made such argument during his motion to strike and the Court rejected the argument when Defendants' counsel represented that the question was fair as expert witness cross-examination. Defendants cannot have it both ways and argue successfully at trial that the expert testimony was permissible, and now argue on this motion for new trial that the testimony was not expert at all.

32. Dr. Stevenson testified as an expert. "Parties must comply with the discovery rules by identifying expert witnesses and disclosing the substance of their expected opinions as a precondition to the admissibility of expert testimony at trial."[49] Since the significance of the spleen in the context of standard of care required a disclosed expert opinion, Dr. Stevenson rendered this opinion beyond the scope of his disclosure. The Monday morning quarterbacking allowed Dr.

---

[49] *Barrow v. Abramowicz*, 931 A.2d 424, 434 (Del. 2007) (citing *Sammons v. Doctors for Emergency Services, P.A.*, 913 A.2d 519, 530–33 (Del. 2006)).

Stevenson to use a stipulation intended for other purposes to speculate about what he would have done had he known otherwise. The combination of the inadmissible testimony and improper use of the stipulation took from the jury the very issue it needed to decide on standard of care as reflected by the verdict. The representation made at trial led to the wrong ruling and the Court should have provided a curative instruction at the time, and precluded or limited the testimony of this hybrid fact/expert witness.

## Conclusion

A new trial is warranted under Superior Court Civil Rule 59(a) where the evidence preponderates heavily against the jury verdict on the issue of standard of care, which was tainted by legal error committed by this Court, primarily related to the admissibility of Dr. Stevenson's testimony and the scope to which he testified as an expert witness in violation of Civil Rule 26.

**IT IS SO ORDERED.**

Vivian L. Medinilla
Judge